UNITED STATES GYPSUM COMPANY, Plaintiff,

v.

William J. MUSZYNSKI et al., Defendants.

No. 00 CIV 9700(JSR).

United States District Court, S.D. New York.

Aug. 31, 2001.

Daniel Riesel, Esq., Sive, Paget & Riesel, P.C., New York City, for Plaintiffs.

Robert Sadowski, Assistant United States Attorney, United States Attorney's Office, New York City, for Defendants.

## MEMORANDUM ORDER

RAKOFF, District Judge.

Plaintiff United States Gypsum Company ("USG") seeks by this action to challenge the failure of the United States Army Corps of Engineers ("COE") to issue a permit that would permit USG to dump sediment from a channel adjoining one of its plants into an ocean floor site designated to receive dredged material from the Port of New York (the "Site"). Concomitantly, plaintiff challenges a change in the criteria for issuing such a permit that was set forth in a Memorandum of Agreement between the COE and the United States Environmental Protection Agency ("EPA") and that led to their last-minute withdrawal of their prior effective approval of the permit. The COE may not issue such a permit without the EPA's concurrence. 33 U.S.C. § 1413; 33 C.F.R. §§ 423.1–.4; 40 C.F.R. §§ 225.1–.4.

In response, defendants, comprised of the COE's New York District, the EPA's Region 2, and the relevant officials of each agency, have moved to dismiss the complaint for lack of subject matter jurisdiction on the ground that no final agency action was taken and that the change in criteria did not affect plaintiff's rights. Alternatively, defendants move to dismiss on the ground that none of the agencies' actions was arbitrary and capricious. For the following reasons the motions are denied.

According to the administrative record, USG applied to the COE for the permit here in issue in April 1998. At that time, the practice of the COE, with the EPA's concurrence, was to deny such a permit if the dredged material sought to be dumped at the Site contained polychlorinated biphenyls ("PCBs") in a concentration of 400 parts per billion ("ppb") or higher as measured by bioaccumulation in worm tissue; conversely, if the PCB level was lower than 400 ppb and all other applicable criteria were met, the permit would be granted. Since a sediment sample from USG's proposed dredging site showed a worm-tissue PCB level of 128 ppb, and all other relevant criteria were met, the COE and EPA, in July 2000, issued a joint evaluation that the material proposed to be dredged was suitable for disposal at the Site. This conclusion was reiterated in a public notice published August 11, 2000 that indicated the defendants' intention to approve USG's application and invited public comment.

The public comment period ended September 25, 2000 with very few negative comments received. On September 26, 2000, however, the COE's New York District and the EPA's Region 2 executed a Memorandum of Agreement that lowered the acceptable worm-tissue PCB level for

disposal at the Site from 400 ppb to 113 ppb, applicable to all pending permit applications and effective immediately. By letter to the COE dated September 27, 2000, the EPA thereupon retracted its prior concurrence in the decision to grant USG's dumping permit, on the express ground that the PCB level in the proposed dredged material was too high to meet the new standard. USG objected, contending that the new PCB standard of 113 ppb had been erroneously calculated, was not based on sound science, and had been improperly implemented. USG further alleged that in any event the PCB concentration in the dredging material it proposed to dump at the Site was actually 111 ppb, rather than 128 ppb as previously calculated, and therefore met the new standard. Nevertheless, by letter dated October 24, 2000 the EPA adhered to its determination that the permit should not be granted.

Theoretically, such non-concurrence by the EPA is not necessarily dispositive. Rather, the COE is then required to assess economically feasible alternatives to the proposed dumping, or if there are none and the dumping is, in the COE's opinion, not contrary to the public interest, the COE must then so advise the EPA, which may withdraw its objections. 33 C.F.R. § 324.4(c). If the objections are not withdrawn within 15 days, the dispute is then referred to the COE's Chief of Engineers, who may request a waiver from the EPA Administrator. 33 C.F.R. § 324.4(d).

Here, however, none of these steps was taken, at least so far as the record discloses; or, if they were, they had no effect, since neither the EPA nor the COE changed its position. Accordingly, after waiting two months beyond the EPA letter of October 24, 2000, USG, alleging that it was suffering severe economic consequences from the effective denial of the permit, brought this action.

■ An agency action is "final," and thereby confers subject matter jurisdiction on this Court, 5 U.S.C. § 704, when it "mark[s] the consummation of the agency's decisionmaking process," *i.e.*, the agency "has rendered its last word on the matter." *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 121 S.Ct. 903, 915, 149 L.Ed.2d 1 (2001) (internal quotation marks omitted). "[T]he action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow,'" *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1022 (D.C.Cir. 2000), *quoting Bennett v. Spear*, 520 U.S. 154, 178, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). However, an agency need not "dress[ ] its decision with the conventional accoutrements of finality," and "its own behavior [may] bel[ie] the claim that its interpretation is not final." *Whitman*, 121 S.Ct. at 915. Ultimately, where an agency's decision is given practical effect, it will be sufficient to trigger judicial review. *See Her Majesty the Queen in Right of Ontario v. EPA*, 912 F.2d 1525, 1531 (D.C.Cir.1990).

In this case, the plaintiff challenges (i) the defendants' adoption of the new PCB standard contained in the Memorandum of Agreement and (ii) the consequent denial of the previously-approved dumping permit. As to the first, whether the new PCB standard is a legislative rule subject to the notice and comment requirements of the Administrative Procedure Act or merely an interpretive rule or statement of past EPA–COE policy, it is still reviewable by this Court if its practical effects are final and binding:

If an agency acts as if a document issued at headquarters is controlling in the field, if it treats the document in the same manner as it treats a legislative rule, if it bases enforcement actions on the policies or interpretations formulat-

ed in the document, if it leads private parties or State permitting authorities to believe that it will declare permits invalid unless they comply with the terms of the document, then the agency's document is for all practical purposes "binding."

*Appalachian Power,* 208 F.3d at 1021.

■ Here, the defendants were literally days away from issuing the USG dumping permit they had previously approved when the EPA, in express reliance on the new PCB standard set forth in the Memorandum of Agreement, rescinded its prior concurrence. These actions demonstrate that, as a practical matter, the new PCB standard, as set forth in the Memorandum of Agreement, was binding and resulted in tangible legal consequences for plaintiff, and that the agencies here "[viewed their] deliberative process as sufficiently final to demand compliance with [their] announced position," *Her Majesty the Queen,* 912 F.2d at 1531; *Ciba–Geigy Corp. v. EPA,* 801 F.2d 430, 435–36 (D.C.Cir.1986).

The fact that the Memorandum of Agreement recites that the new PCB standard is subject to continuing revision is of no import, for every regulation—indeed every law—can be changed at any time, *Appalachian Power,* 208 F.3d at 1022. Likewise, even though the Memorandum of Agreement declares that it is "intended exclusively for the internal management of the Executive Branch, and does not establish or create any enforceable rights, legal or equitable, on behalf of any person or entity not a signatory to this agreement," such boilerplate cannot render an other-

wise final and binding agency action non-final and non-binding.[1]

As to the denial of the permit itself, the applicable regulations, as previously noted, require the EPA's concurrence in the issuance of the permit, a concurrence that the EPA here first withdrew and then formally reconfirmed it would refuse to give in light of the new PCB standard. While the regulations further provide that in such situations the COE must explore alternatives and may even seek reassessment by the EPA, a failure to promptly pursue such steps is tantamount to practical denial of the permit. The regulations generally provide for a 60–day framework in which the COE is to grant or deny permit applications, 33 C.F.R. § 325.2(d)(3), and even though the period required for EPA concurrence may extend this deadline, 33 C.F.R. § 325.2(d)(3)(vi), the fact that more than ten months have now elapsed since the EPA reconfirmed its refusal to agree to the permit and yet no further review has been taken is powerful evidence that such denial was final.[2]

A court's determination of the finality of an agency's action is a "flexible and pragmatic" one, *Ciba–Geigy Corp.,* 801 F.2d at 435. An agency must conclude matters presented to it within a reasonable time, 5 U.S.C. § 555(b); *Her Majesty the Queen,* 912 F.2d at 1534; and "[w]hen administrative inaction has the same impact on the rights of the parties as an express denial of relief, judicial review is not precluded," *Her Majesty the Queen,* 912 F.2d at 1531. Here, when the EPA's twice-stated declination to concur in the granting of USG's permit is coupled to the COE's failure to

---

1. Similar recitations in other EPA documents have been described as "a charade, intended to keep the proceduralizing courts at bay," Peter L. Strauss, *The Rulemaking Continuum,* 41 Duke L.J. 1463, 1485 (1992).

2. Although the parties submit dueling affidavits as to why the agencies here have taken little or no action since October 2000, a Court reviewing agency action is normally restricted to the administrative record alone, and in any case, the fact of such inaction, whatever its motivation, is essentially unrebutted.

undertake any meaningful reassessment of the matter throughout the many months thereafter, it is obvious that the COE has effectively already determined that further reviews will not change that result and that COE's inaction now represents "effectively final agency action that the agency has not frankly acknowledged," *Sierra Club v. Thomas,* 828 F.2d 783, 793 (D.C.Cir.1987).

For these reasons, the Court concludes that both the adoption of the new PCB standard and the effective denial of the permit application should be subject to immediate judicial review. Implicitly acknowledging such a possibility, defendants, in addition to their jurisdictional challenge, have also moved, in the alternative, to dismiss the complaint on the ground that the administrative record shows that the agency actions here challenged were not arbitrary, capricious, or contrary to law. Subsequent to that motion being filed, however, several documents were added to the administrative record before the Court, *see* July 10, 2001 Order, documents that were not addressed in the parties' motion papers and that, in plaintiff's interpretation, materially alter the mix. Accordingly, the Court denies defendants' alternative motion, without prejudice to further motion practice on the issues it raises.

For the foregoing reasons, defendants' motion to dismiss for lack of subject matter jurisdiction is denied with prejudice, and defendants' alternative motion to dismiss for failure to state a claim is denied without prejudice.

SO ORDERED.